# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| NEAL THOMAS SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:14-cv-262 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Neal Thomas Smith ("Smith") challenges the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f. Specifically, Smith alleges that the ALJ erred by finding that he did not meet the requirements of listing 12.05C for intellectual disability, by failing to probe his non-exertional impairments and by failing to consider his ability to function outside of his home. I find that substantial evidence supports the ALJ's determination. Thus, I **DENY** Smith's Motion for Summary Judgment (Dkt. No. 13), and **GRANT** the Commissioner's Motion for Summary Judgment. Dkt. No. 18.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Smith failed to demonstrate that he was disabled under the

---

[1] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

1

Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Smith filed for SSI and DIB on December 28, 2010, claiming that his disability began on July 22, 2010.[3] Administrative Record, hereinafter "R." 14. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 161–67, 176–82, 183–89. On November 8, 2012, ALJ Anne Sprague held a hearing to consider Smith's disability claim. R. 55–81. Smith was represented by an attorney at the hearing, which included testimony from vocational expert Ruth Fast. Id.

On July 25, 2013, the ALJ entered her decision analyzing Smith's claim under the familiar five-step process,[4] and denying Smith's claim for benefits. R. 14–25. The ALJ found

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] Smith's date last insured was September 30, 2014. R. 16. Thus, he must show that his disability began before that date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner

that Smith suffered from the severe impairments of degenerative disc disease, borderline intellectual functioning and adjustment disorder with depressed mood. R. 16. The ALJ found that these impairments did not meet or medically equal a listed impairment. R. 17. The ALJ further found that Smith had the residual functional capacity ("RFC") to perform light work, except that he can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds; occasionally kneel, stoop, crouch and crawl; avoid concentrated exposure to hazards such as moving machinery and unprotected heights. R. 19. The ALJ further found that Smith was limited to simple, unskilled, non-stressful, routine, repetitive job tasks and can interact appropriately with others. R. 19. The ALJ determined that Smith could not return to his past relevant work, but that he could work at jobs that exist in significant numbers in the national economy, such as parking lot attendant, shredder operator, and marker. R. 24. Thus, the ALJ concluded that he was not disabled.

Smith requested that the Appeals Council review the ALJ's decision. On March 24, 2014, the denied Smith's request for review (R. 1–5), and this appeal followed.

## ANALYSIS

**Listing 12.05C**

On appeal, Smith alleges that the ALJ erred by failing to adopt the opinion of his treating physician that his mental impairment meets or equals listing 12.05C. Smith was born in 1972, has a ninth grade education and is unable to read and write. R. 24, 62. He previously worked as an iron worker, construction laborer, and brick manufacturing laborer. He also worked in a

---

at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

3

wood factory. R. 308. Smith stopped working at his construction job in July 2010 when he was rear-ended in a car accident and began to suffer low back pain. R. 63.

A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). "When satisfied, the listings of impairments automatically result in a finding of disability. The listings are designed to reflect impairments that, for the most part, 'are permanent or expected to result in death.'" Casillas v. Astrue, No. 3:09-CV-00076, 2011 WL 450426, at *4 (W.D. Va. Feb. 3, 2011) (citing 20 C.F.R. § 404.1525(c)(4)).

Listing 12.05(C) for intellectual disability states the following:

> **12.05 *Intellectual disability***: intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> …
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 12.05. The structure of this listing is different than other mental disorder listings in that it contains "an introductory paragraph with the diagnostic description for intellectual disability" as well as four sets of criteria in Paragraphs A through D. 20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 12.00(A). Thus, listing 12.05(C) presents a three-pronged proof requirement. Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012). First, Prong 1 requires a showing of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period...." Prong 2 requires a

4

valid verbal, performance, or full scale IQ score of 60 through 70. Prong 3 requires that the claimant establish "a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. Here, I find that Smith satisfies prongs 2 and 3, but not prong 1 because substantial evidence supports the ALJ's conclusion that Smith did not have deficits in adaptive functioning that initially manifested before age 22.

### Prongs 2 and 3- IQ and Physical or Other Mental Impairment

There is no dispute that Smith has a valid verbal, performance or full scale IQ score of 60 through 70. On May 25, 2011, Angela Berry, Psy.D., completed a psychological evaluation of Smith and performed a Weschsler Adult Intelligence Scale-Fourth Edition (WAIS-IV). R. 533–38. Smith scored a full scale IQ of 65, with a verbal comprehension composite score of 74, and a perceptional reasoning scale of 75. R. 536. Dr. Berry found a 95% chance that Smith's true IQ score falls in the range of 62–70, although she noted that his test scores may slightly underestimate his true level of cognitive functioning. R. 537. There is no evidence of a change in Smith's intelligence functioning, thus it must be assumed that his IQ has remained relatively constant over time. Luckey v. U.S. Dep't Health & Human Servs., 890 F.2d 666, 668 (4th Cir. 1989). Thus, Dr. Berry's report establishes that Smith's IQ scores are within the 60–70 range as required for Prong 2.

Smith also satisfies Prong 3, the presence of a "physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05C. The ALJ found that Smith suffered from degenerative disc disease and adjustment disorder with depressed mood. R. 16. These are severe physical and mental impairments, as defined by 20 C.F.R. § 416.920(c), and the ALJ explicitly found that "these impairments cause more than minimal work-related limitations and are thus 'severe' as that term

5

is defined in the Regulations." R. 16. As listing § 12.00 adopts the definitions in 20 C.F.R. § 416.920(c), this finding necessarily means that the evidence of record met the requirements of Prong 3 of Listing 12.05(C), i.e. "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 12.05(C); see Jackson v. Astrue, 467 F. App'x 214, 217 (4th Cir. 2012) (finding that where ALJ found severe impairments at step two, along with other diagnosed conditions, claimant had satisfied the "impairment imposing an additional and significant work-related limitation of function" prong); Alderman v. Chater, 40 F. Supp. 2d 367, 371 (N.D.W. Va. 1998) (finding that because the evidence established other severe physical and mental impairments, this satisfied the requirement of an "impairment imposing an additional and significant work-related limitation of function").

Additionally, the Fourth Circuit has found that a claimant has a significant work-related limitation if he or she cannot perform his past relevant work. Flowers v. U.S. Dep't of Health & Human Servs., 904 F.2d 211, 214 (4th Cir. 1990) (citing Branham v. Heckler, 775 F.2d 1271, 1273 (4th Cir . 1985)). Here, the ALJ determined that Smith could not perform his past relevant work as a construction laborer, ironworker helper and lumber helper. R. 23. Thus, the remaining issue is whether Smith satisfies prong 1 of listing 12.05C, deficits in adaptive functioning initially manifested prior to age 22.

### **Prong 1- Deficits in Adaptive Functioning**

The ALJ determined that Smith did not have deficits in adaptive functioning that initially manifested prior to age 22, and as such, did not meet the requirement of listing 12.05C. I have carefully considered the ALJ's conclusions and the evidence of record. I find that substantial

evidence supports the ALJ's determination that Smith did not manifest deficits in adaptive functioning prior to age 22.

"While 'intellectual functioning' is determined by standardized intellectual quotient (or "IQ") testing, '[a]daptive functioning refers to how effectively an individual copes with common life demands and how well [he] meets the standards of personal independence expected of someone in [his] particular group, sociocultural background, and community setting.'" Salmons v. Astrue, No. 5:10cv195, 2012 WL 1884485, *2 (W.D.N.C. May 23, 2012) (citing Caldwell v. Astrue, No. 1:09cv233, 2011 WL 4945959, *3 (W.D.N.C. October 18, 2011) (quoting Diagnostic and Statistical Manual of Mental Disorders ("DSM") (4th ed. text rev. 2007)). The Commissioner's regulations note that adaptive activities of daily living include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. § 404, Subpart P, App.1, § 12.00C(1).

Smith has the burden of proving a deficiency in adaptive functioning during his developmental years. Hancock, 667 F.3d at 476 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). Although it is assumed that Smith's IQ score was constant throughout his life, and thus was in the range of 65 before he turned 22, an IQ score, in the context of all of the evidence, is not enough to prove deficits in adaptive functioning indicative of mental retardation. See Dearry v. Astrue, No. 2:11cv00027, 2012 WL 1165332, at *5 (W.D. Va. April 9, 2012) (citing Moon v. Astrue, No. 6:08cv40016, 2009 WL 430434, at *7–8 (W.D. Va. Feb. 20, 2009).

On November 18, 2012, Smith's primary care physician, Charles L. Cooke, M.D., completed a medical source statement with regard to Smith's physical impairments. R. 626–35. Dr. Cooke stated that Smith meets listing 12.05C, stating, "[h]e clearly had [IQ score of 65]

7

before age 22 since he completed only the 8th grade, he was in spec[ial] ed[ucation] [and] can write only his name." R. 626.

On December 18, 2012, consultative psychologist Gary Bennett, Ph.D., completed an interrogatory as to Smith's mental impairments and concluded that he did not meet listing 12.05C. Dr. Bennett noted that Smith's educational difficulties and inability to read and write could point to possible mental retardation but could also be a result of learning disorders or other factors. R. 644. Dr. Bennett also noted that there is no evidence relevant to deficits in adaptive functioning other than Smith's poor grades. R. 644. Dr. Bennett considered Dr. Berry's assessment of Smith's IQ, along with her opinion that it was a slight underestimate of his intellectual capacity. Dr. Bennett also considered and disagreed with Dr. Cooke's conclusion that Smith meets listing 12.05C. Id.

The ALJ agreed with Dr. Bennett's findings, and determined that the evidence did not reflect that Smith had adaptive deficits prior to age 22 manifested as to meet or equal Listing 12.05C. The ALJ dismissed Dr. Cooke's conclusion, noting that his analysis was perfunctory and outside of his area of expertise. R. 18.

Substantial evidence supports the ALJ's decision. The ALJ noted that Smith testified that he could not read or write and attended six schools growing up. Id. While Smith reported difficulty in school and poor grades, poor academic performance alone does not establish adaptive deficits. See Moon, 2009 WL 430434, at *7 ("Grades and IQ scores, without more, do not prove how effectively individuals cope with common life demands and how well they meet the expected standards of personal independence."). Courts also consider a claimant's current level of adaptive functioning, together with his or her past academic performance and IQ, to determine whether the claimant initially manifested deficits in adaptive functioning before age

8

Case 7:14-cv-00262-RSB   Document 21   Filed 09/25/15   Page 8 of 12   Pageid#: 755

22. See Hancock, 667 F.3d at 476 (plaintiff did not have deficits in adaptive functioning manifested before age 22 where ALJ found that her poor grades were due to absences from school, IQ scores were higher than expected from someone with mental retardation, and plaintiff could shop, pay bills, make change, care for three small grandchildren, cook, bake, and attend school to obtain a GED); Dearry v. Astrue, 2012 WL 1165332, at *5 (plaintiff did not have deficits in adaptive functioning before age 22 where her IQ score is 66, she left school to get married, she takes care of three children, manages benefits of disabled children, works around the house, shops, socializes with family members, is financially independent, can read and write relatively well, and has a driver's license); Goelling v. Astrue, No. 7:09cv00225, 2010 WL 3733538, *4 (W.D. Va. Aug. 30, 2010)(plaintiff did not have deficits in adaptive functioning prior to age 22 where early school records reveal normal grades and behaviors, and no difficulty reading or writing); Moon, 2009 WL 430434, at *8 (record does not reflect significant deficits in adaptive functioning manifested before age 22 where claimant has limited reading ability, quit school in tenth grade to go to work, has no problem with personal care, performs daily chores, mows the lawn, is able to drive and go out alone, counts change, handles savings account and the checkbook, and regularly attends church).

As noted above, Dr. Berry completed a psychological evaluation of Smith in May 2011, during which Smith reported that he goes outside daily; travels unaccompanied by car; counts change; enjoys playing with his kids and fishing, attends church three times a month, completes yard work and socializes with friends.[5] R. 534–35. Smith lives with his wife and three children and reported being capable of independent self-care and financial management. Id. Thus, the evidence reflects that Smith is able to cope with common life demands and function

---

[5] Smith reported limitations with several of his daily activities, such as engaging in housework, playing with his kids, and fishing, due to pain caused by his physical impairments, not as a result of mental limitations. R. 534.

9

independently, aside from his limited ability to read and write.  He is also able to maintain personal relationships and care for his family.  A claimant's past work experience may also be relevant to the consideration of his level of adaptive functioning.  See Hancock, 667 F.3d at 475-76.  Smith reported full time employment for the past fifteen or more years, with employment at each job for approximately five years at a time. R. 535.

The ALJ noted that although Smith quit school after the eighth grade, was placed in special education, was suspended for smoking, and typically earned grades of Fs, he also reported good relationships with teachers and peers, and the ALJ found no other suggestions of pre-22 adaptive deficits. Id.  Accordingly, substantial evidence supports the ALJ's conclusion that Smith does not meet all three prongs of listing 12.05C.

**RFC**

Smith also claims that the ALJ "failed to probe" Smith's non-exertional impairments and failed to consider his ability to function outside of his home. See Pl. Br. Summ. J. p. 8–9. Smith's argument that the ALJ failed "to probe the significance of Smith's non-exertional impairments" implies that the ALJ did not consider all of the relevant facts when evaluating Smith's RFC.  Pl. Br. Summ. J. p. 8. Smith does not point to any specific evidence that the ALJ improperly considered or failed to consider, or any standard of law that the ALJ failed to follow. Rather, Smith simply argues that, based upon the facts in the record, the ALJ should have found that he was incapable of performing work that exists in the national economy.

The ALJ considered all of the evidence in the record, including treatment records, physicians' opinions and Smith's testimony regarding his non-exertional impairments.  The ALJ recognized that Smith suffered from non-exertional impairments (e.g. borderline intellectual functioning and adjustment disorder with depressed mood), and specifically accounted for those

impairments in the RFC by limiting Smith to simple, unskilled, non-stressful, routine, repetitive job tasks. Smith's argument that the ALJ did not "fully probe" Smith's non-exertional impairments is nothing more than an invitation to re-analyze the facts, re-weigh the evidence and make a de novo determination of the proper RFC in this matter, which I am not permitted to do under the regulations. The issue before this Court is not whether it is plausible that a different fact finder could have drawn a different conclusion or even if the weight of the evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence. So long as this standard—defined as more than a mere scintilla but perhaps somewhat less than a preponderance—is met, I cannot recommend reversing the ALJ. Craig v. Chater, 76 F.3d 585, 589 (4th Cir .1996) (internal citations omitted).

Smith also objects to the ALJ's consideration of his activities of daily living as a basis for finding him capable of a range of light work. Smith acknowledges that the ALJ is entitled to consider his activities of daily living, but claims that the ALJ must also consider his ability to function outside of the home. Once again, Smith does not direct the Court to any evidence in the record that the ALJ failed to consider or considered in error. Smith is simply asking the Court to re-weigh the evidence, which I am not permitted to do under the regulations.

As noted above, Smith reported that he goes outside daily; travels unaccompanied by car; counts change; enjoys playing with his kids and fishing, attends church three times a month, completes yard work and socializes with friends. R. 534–35. Smith lives with his wife and three children and reported being capable of independent self-care and financial management. Id. The ALJ considered Smith's activities of daily living, in combination with all the other evidence in the record, and found that it did not support a finding of disability. R. 23. The ALJ acknowledged that Smith's activities of daily living are "limited" as a result of his impairments,

11

but found that the activities Smith does perform are inconsistent with his complaints of prolonged and consistent disabling functional limitations. R. 23.  The Commissioner is required to consider factors such as a claimant's daily activities and treatment used for pain in determining and evaluating a claimant's subjective complaints and credibility. See 20 C.F.R. § 404.1529.  Thus, the ALJ's consideration of Smith's daily activities as an indicator of disability is not an error.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for summary judgment is **GRANTED** and Smith's motion for summary judgment is **DENIED**.

Enter:  September 25, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge